FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re

        Lena M. Elmendorf,

                Debtor.

-------------------------------------------------------x
In re

        Diana M. Finlay,

                Debtor.

-------------------------------------------------------x
In re

        Shayna H. Zarnel,

                Debtor.

-------------------------------------------------------x

**Chapter 13**
**Case No. 05-55048**

**Chapter 13**
**Case No. 06-35274**

**Chapter 13**
**Case No. 06-35189**

<u>**A P P E A R A N C E S**</u>:

Eric J. Small, Esq.
Office of the United States Trustee
74 Chapel Street
Suite 200
Albany, New York  12207

<u>**MEMORANDUM OPINION ON VARIOUS MOTIONS TO DISMISS CHAPTER**</u>
<u>**13 CASES FOR CAUSE PURSUANT TO 11 U.S.C. §§ 109(h)(1), 521(a) and (b),**</u>
<u>**and 707(a)**</u>

**CECELIA G. MORRIS, U.S.B.J.:**

      In this opinion, the Court again determines the proper means of disposing of a

bankruptcy petition filed by a debtor who has not undergone the requisite credit briefing

required by Section 109(h) of the Bankruptcy Abuse Prevention and Consumer

Protection Act  of 2005 (hereinafter "BAPCPA").  One of the watermark provisions of

this much heralded legislation, which took several years to enact, is the credit counseling

requirement of 11 U.S.C. § 109(h).  Credit counseling was a significant aspect of the new

bankruptcy legislation because the requirement was intended to provide debtors with

education as to all of their options when experiencing financial difficulty, *before* a resort

to bankruptcy protection was necessary.  Congress envisioned that credit counseling

would provide individuals with the skills necessary to lead financially responsible lives.

This facially well-intentioned[1] section of the BAPCPA has evolved into an expensive,

draconian gate-keeping requirement that has prevented many deserving individuals from

qualifying for bankruptcy relief.  The credit counseling requirement has not proven to be

of assistance to debtors in seeking relief outside of the bankruptcy context, as shown by a

recent survey[2] of credit counseling agencies performed by the National Association of

Consumer Bankruptcy Attorneys.  That study determined that of 66,335 consumers

served by the participating credit counseling agencies, a paltry 3.3 percent qualified for

alternative (i.e. non-bankruptcy) debt management treatment.  Additionally, many of

these same credit-counseling agencies have come under fire for fraudulent practices;

some have lost their not-for-profit status.[3]  The requirement that a debtor seek "credit

counseling" before being eligible for bankruptcy relief is quickly becoming the most

outrageous fleecing of consumer debtors in this Court's memory – a perfunctory exercise

with little or no substance which leaves a putative debtor $50-$100 the poorer.  The Court

---

[1] As Clare Boothe Luce is quoted to have remarked, "No good deed goes unpunished."

[2] See footnote 10, *infra*.

[3] In May, 2006, the Internal Revenue Service revoked the tax exempt status held by the nation's largest educational credit counseling services, representing 41% of the $1 billion credit counseling industry, after IRS audits revealed that the credit counseling agencies "…exist mainly to prey on debt-ridden customers." I.R.S. Ends Tax Exempt Status For Some Credit Counselors, N.Y. Times, May 16, 2006, at C6.  It is into the hands of "predators" such as these that the consumer debtor has been entrusted before resort to bankruptcy protection may be had.  As the filing statistics show bankruptcy is still available – but now the credit counseling agencies are guaranteed a piece of the action.  Perhaps Congress should have taken a closer look at this industry before placing it between a debtor and the succor of the federal bankruptcy court.

has seen at least one example of a "Client Action Plan" provided to a consumer debtor before this Court.  *See* In re Anthony Rios, Case No. 05-55002, ECF Docket No. 11.  The Client Action Plan proposed in that case is repetitive, advising the debtor twice to track expenses, and tends to state the obvious, such as recommending that debtor seek a job making higher wages, and referring debtor to the local library for resources on bankruptcy.

Nevertheless, this Court has sworn to uphold the law.  It is not the province of this Court to rewrite the law.  The Court must enforce the law as the Court presumes Congress intended.  In keeping with this responsibility, this Court was obliged to determine whether a debtor's non-compliance with the credit-counseling gate-keeping requirement necessitated dismissal or striking of the debtor's case/petition in *In re Rios*, 336 B.R. 177 (Bankr. S.D.N.Y. 2005). The Court never imagined that the great wave of judicial opinion would turn against her on this seemingly innoffensive issue; however, the Court still is of the opinion that dismissal of the petition/case pursuant to 11 U.S.C. § 707(a) is for the most part an inappropriate remedy for a debtor's innocuous failure to obtain counseling, prior to filing a bankruptcy petition, because 1) no case was "commenced" by such a filing,[4] and 2) Congress did not intend for debtors' protections under the BAPCPA to be limited in a future bankruptcy filing where the debtor's failure to comply with § 109(h) was obviously done out of ignorance of the gate-keeping requirement.[5]  In other words, the Court does not think that the failure to file a credit

---

[4] *See* 11 U.S.C. § 301(a), which states that "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter."

[5] This is particularly so where the debtor is proceeding *pro se*, as the vast majority of debtors who do not obtain credit counseling before filing a petition do.  These debtors are usually the most indigent, the most in need of immediate bankruptcy protection, and the persons to whom courts are required to give considerable

counseling certificate alone is "cause" to dismiss. It may be that in some cases, however, the failure to obtain credit counseling, taken together with other circumstances (i.e. multiple filings, or after an extension has been sought and granted), indicates that the failure to obtain such counseling is not due to ignorance but as part of a larger scheme to delay or hinder creditors. In these circumstances, some sort of relief with prejudice may be appropriate in the exercise of the Court's discretion.

## **JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. Sections 1334(a) and 157(a) and the standing order of reference to bankruptcy judges dated July 10, 1984 signed by acting Chief Judge Robert J. Ward. This is a core proceeding under 28 U.S.C. Section 157(b)(1).

## **BACKGROUND FACTS**[6]

### **In re Lena Elmendorf, Case No. 05-55048:**

Debtor Lena Elmendorf filed a voluntary Chapter 7 petition on November 29, 2005 through the auspices of retained counsel Patrick F. Moore. This is Ms. Elmendorf's first bankruptcy filing. Her bankruptcy petition was accompanied by bankruptcy schedules A-J, as required by 11 U.S.C. § 521(a)(1). Debtor did not file with her bankruptcy petition a credit-counseling certificate as required by § 521(b), or seek an extension of time to file same pursuant to 11 U.S.C. § 109(h)(3)(A). On February 1, 2006, the United States Trustee's Office filed a Motion to Dismiss Chapter 7 Case for

---

leniency in procedural and pleading requirements. *See e.g. In re Bass*, 2006 WL 1593978 *2 (Bankr. W.D. Tenn. Jun. 9, 2006).

[6] The Court takes judicial notice of records filed on the Electronic Case Filing System ("ECF") in each of the bankruptcy cases referred to in this decision. *See First Capital Asset Mgmt., Inc. v. Brickellbush*, 219 F.Supp.2d 576, 584 (S.D.N.Y. 2002). The facts as set forth herein are gleaned from a review of the Court's docket, or from documents filed in these Debtors' respective bankruptcy cases.

Cause Pursuant to 11 U.S.C. §§ 109(h)(1), 521(b) and 109(h), ECF Docket No. 8 (the

"Elmendorf Dismissal Motion"). On March 30, 2006, a Memorandum of Law in Further

Support of the United States Motion to Dismiss Chapter 7 Case was filed, ECF Docket

No. 11 (the "Supplemental Brief"), and a hearing was held on May 16, 2006.  The Court

reserved decision on the issue at that time.

**In re Diana Finlay, Case No. 06-35274:**

Diana Finlay filed the current Chapter 13 case on April 3, 2006.  Ms. Finlay is

representing herself in the instant filing.  This filing is what is commonly referred to as a

"skeletal" filing – Ms. Finlay has filed only the petition and a list of creditors, with no

schedules or statement of financial affairs as required by 11 U.S.C. § 521(a)(1) and Fed.

R. Bankr. P. 1007(a)(1) (the "Required Schedules").  The Required Schedules were due

on April 18, 2006, but have not been submitted.  Ms. Finlay did not file a credit-

counseling certificate with her pending bankruptcy petition, but did seek an extension of

time to file such certificate.  The Court denied Debtor's request for an extension in the

pending bankruptcy case because Ms. Finlay failed to state in her certification that she

attempted to get a credit briefing within five days of her filing, *see* 11 U.S.C. §

109(h)(3)(A)(ii).

This is Ms. Finlay's third bankruptcy filing in the past year; she filed her first

Chapter 13 petition on August 31, 2005, case number 05-37481, which was dismissed on

October 24, 2005.  Debtor's first bankruptcy case was also filed pro se, without the

requisite schedules, and was dismissed for that reason, *see* 11 U.S.C. § 521(a)(1) and (i).

Debtor filed her second Chapter 13 case on November 28, 2005, case number 05-55045.

This second case was also a skeletal filing; Debtor Finlay did seek an extension of time to

file the credit counseling certificate in that case, which was granted.  The credit

counseling certificate was not filed with the Court as required by Section 109(h)(3)(B),

Debtor's second case was subsequently dismissed for failure to file the requisite

schedules and statements required by Section 521(a)(1) pursuant to 11 U.S.C.

§ 1307(c)(1).

In the present filing, Debtor Finlay's secured lender, Ameriquest Mortgage

Company, obtained a "comfort order" on May 9, 2006 pursuant to 11 U.S.C. § 362(j),

confirming that no stay came into effect upon the filing of the current petition in

accordance with 11 U.S.C. § 362(c)(4) due to the two prior filings, *see* ECF Docket No.

13.  On May 3, 2006, the United States Trustee filed a Motion to Dismiss Chapter 13

Case for Cause Pursuant to 11 U.S.C. Sections 109(h)(1), 521(b) and 1307(c), *see* ECF

Docket No. 11 (the "Finlay Dismissal Motion").  The Court reserved decision on

dismissal so that the Finlay Dismissal Motion could be decided together with the

Elemendorf Dismissal Motion.

**In re Shayna Zarnel, Case No. 06-35189:**

Debtor Shayna Zarnel filed the instant Chapter 13 case on March 13, 2006.  This

case is her first bankruptcy filing, but this Court is very familiar with her husband, Alfred

R. Zarnel, who has filed 5 bankruptcy petitions in this Court since January, 2004.[7]  Mrs.

Zarnel's Chapter 13 petition was filed approximately a month and a half after Mr.

Zarnel's last filed bankruptcy case was closed, in continuance of Mr. Zarnel's pattern of

instituting a bankruptcy filing, without making any meaningful attempt to reorganize or

---

[7] *See* Chapter 13 case number 04-30000, filed on January 5, 2004 and dismissed on March 23, 2004;
Chapter 13 case number 04-30129, filed on May 20, 2004, and dismissed on June 25, 2004; converted
Chapter 13 case number 04-30230, filed on August 24, 2004, and dismissed on March 25, 2005; Chapter 13
case number 05-36352, filed on May 16, 2005, and dismissed on September 20, 2005; and Chapter 7 case
number 05-37950, filed on September 30, 2005, discharge order issued on February 1, 2006.

comply with the provision of the bankruptcy code, and upon any subsequent dismissal, re-filing within two months to stay scheduled foreclosure sales.  The Zarnels' secured creditor, Option One Mortgage Corporation, has been very active in Mr. Zarnel's cases, and has filed an objection to the confirmation of Mrs. Zarnel's Chapter 13 plan, *see* ECF Docket No. 19.  The Objection to Confirmation states, *inter alia*, that the Zarnels owe $68,491.09 in pre-petition mortgage arrears; yet Mrs. Zarnel's plan proposes to pay only $360.00 per month in plan payments for 60 months, totaling $21,600; this proposed Chapter 13 plan will leave a shortfall of approximately $47,000 in secured arrearages, and the plan is therefore not confirmable in its present iteration pursuant to 11 U.S.C. § 1322(b)(3).  At a June 27, 2006 hearing on Option One's Objection to Confirmation, Mrs. Zarnel appeared, but asked that her husband be permitted to speak for her as he was more familiar with the filing than she, a request which the Court granted.

Mrs. Zarnel did not file a credit counseling certificate with her bankruptcy petition, but she did seek an extension of time to file the credit counseling certificate pursuant to 11 U.S.C. § 109(h)(3).  Mrs. Zarnel's request was denied because she failed to set forth exigent circumstances that merited a waiver in her certification, *see* 11 U.S.C. § 109(h)(3)(i).  On April 3, 2006, Mrs. Zarnel filed a credit counseling certificate, which stated that on March 21, 2006, approximately a week after the bankruptcy case was filed, she received credit counseling.  On May 4, 2006, the United States Trustee filed a Motion to Dismiss Chapter 13 Case for Cause Pursuant to 11 U.S.C. Sections 109(h), 521(b), and 1307(c), ECF Docket No. 16 (the "Zarnel Dismissal Motion").[8]  The Zarnel Dismissal Motion was heard by the Court on May 30, 2006, at which time the Court reserved

---

[8] The Chapter 13 Trustee has also filed a Motion to Dismiss Debtor's Chapter 13 case, for failure to make plan payments.  That motion, returnable July 11, 2006, is not the subject of this opinion.

decision to consider the arguments made by the United States Trustee in connection with the Elmendorf and Finlay Dismissal Motions.

## **DISCUSSION**

As is evident from the facts of these rather divergent cases, there are many different circumstances that may cause a debtor to fail to obtain credit counseling. Some debtors may simply be ignorant of the requirement altogether, while others may satisfy the requirement late or may seek an extension as a component of a larger pattern of delay. The Court has been asked to treat all of these debtors identically. Given their particular circumstances – should Lena Elmendorf, who has never filed a bankruptcy petition in the past, and has relied on counsel to file her case, and apparently failed to obtain credit counseling out of ignorance or due to law firm mistake,[9] be treated the same as Diana Finlay, who apparently has engaged in a series of skeletal filings in an attempt, reminiscent of bad faith, to forestall her secured creditor from exercising its rights in her collateral, or as Shayna Zarnel, who has joined her husband in his efforts to prevent Option One Mortgage from foreclosing on their real property despite the Zarnels' obvious inability or refusal to fulfill their payment obligations to their secured creditor? The Court thinks that the appropriate outcome, if requested,[10] is to allow these debtors to be treated differently in accordance with their circumstances; the issue remains whether the BAPCPA allows the Court the discretion to do so.

---

[9] Presumably, counsel would not intentionally file a bankruptcy petition post-BAPCPA without (1) a credit counseling certificate or (2) an application to extend the debtor's time in which to do so, although this is exactly what Lena Elmendorf's attorney apparently did.

[10] Before prejudicial relief is granted, the party affected thereby should be given an opportunity to be heard.

**The Credit Counseling Requirement:**

In requiring individual debtors to undergo a credit briefing prior to seeking bankruptcy relief, Congress intended to educate debtors as to their financial options, as well as improve the financial choices debtors make. Congress likely presumed that most, if not all, individual debtors who seek bankruptcy relief do so as a result of poor financial management.[11] The statistics have not borne this presumption out; in fact, many people seek bankruptcy protection as a last resort after they have exhausted all their resources in coping with an emergency situation such as a serious or fatal illness of a family member, or the loss of a job, or a divorce. The credit counseling provision of the BAPCPA, no matter how onerous or expensive,[12] must be complied with by an individual prior to filing, *regardless* of the events that precipitated the debtor's filing.

11 U.S.C. § 109(h) states as follows:

> (1) Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis…

---

[11] See generally Press Release, National Association of Consumer Bankruptcy Attorneys, STUDY: CONTROVERSIAL BANKRUPTCY LAW REFORMS NOT WORKING? 97 PERCENT UNABLE TO REPAY DEBTS, MOST PUSHED TO BRINK BY CRISIS - NACBA Analysis of More than 60,000 Consumers Processed Under New Law Asks: "Where Are the Deadbeats" Congress Expected to Find and Stop With Onerous Rule Changes? (Feb. 22, 2006) (available at http://nacba.com/news/releases/022206.php ) (last visited June 30, 2006) (quoting Senatorial comments regarding fiscal irresponsibility as a major cause of bankruptcy filings).

[12] Credit counseling costs on average about $50 per telephone session. *See* Brigette Yuille, *9 Bankruptcy Costs You Should Know About*, BANKRATE.COM, Jun. 28, 2006, http://www.bankrate.com/ThirdAge/news/bankruptcy/20060628a1.asp.

(3)(A) Subject to subparagraph (B), the requirements of paragraph (1) **<u>shall not apply</u>** with respect to a debtor who submits to the court a certification that--

(i)      describes exigent circumstances that merit a **waiver** of the requirements of paragraph (1);

(ii)     states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services referred to in paragraph (1) during the 5-day period beginning on the date on which the debtor made that request; and

(iii) is satisfactory to the court.

(B) With respect to a debtor, an **exemption** under subparagraph (A) shall cease to apply to that debtor on the date on which the debtor meets the requirements of paragraph (1), but in no case may the exemption apply to that debtor after the date that is 30 days after the debtor files a petition, except that the court, for cause, may order an additional 15 days.

(Emphasis supplied).

Surprisingly, there has been a frenzy of case law on the credit-counseling requirement, and not all of it is congruent.  Section 109(h) has been strictly construed by courts, and all courts that have decided the issue have stated that a debtor that does not receive credit-counseling prior to filing for bankruptcy relief, or seek and receive an "extension" pursuant to 11 U.S.C. § 109(h)(3), is ineligible to be a debtor.  *See In re Hedquist*, 342 B.R. 295, 297 (8th Cir. BAP 2006) (bankruptcy courts have no discretion but to dismiss a case when the debtor fails to file a certification in compliance with the credit counseling provisions of Section 109); *In re Cleaver*, 333 B.R. 430 (Bankr. S.D. Ohio 2005) (Section 109(h)(3) is "unequivocal and allows for no other excuse or exception"); *In re Warden*, 2005 WL 3207630 (Bankr. W.D. Mo. Nov. 22, 2005) (Section 109(h) is clear in that it unequivocally requires that the credit counseling be

obtained prior to the filing of the petition; the only exception to pre-petition counseling is

the exigent circumstances exemption applicable only on satisfaction of the three clearly

stated requirements); *In re Sosa*, 336 B.R. 113 (Bankr. W.D. Tex. 2005) (a debtor who

does not request the required credit counseling services from an approved nonprofit

budget and credit counseling service before the petition is filed is ineligible to be a debtor

no matter how dire the circumstances the person finds themselves in at that moment); *In

re Mingueta*, 333 B.R. 833 (Bankr. C.D. Cal. 2006) (absent strict compliance with

Section 109(h), individual debtors are ineligible for bankruptcy relief).  Thus, the non-

compliant individual who does not obtain credit counseling is ineligible to enjoy the

benefits of the Bankruptcy Code.  Credit counseling is an absolute pre-requisite to

individual bankruptcy eligibility.

There is one exception to the requirement that an individual obtain credit

counseling prior to filing, and it is to obtain an "extension" in accordance with Section

109(h)(3)(A).  In considering the issue of whether to strike or dismiss a deficient filing,

the Court has come to the conclusion that Congress used very misleading diction in

phrasing the extension provision of § 109(h)(3).  First, § 109(h)(3)(A) indicates that the

credit counseling requirement "shall not apply" to a debtor who makes the certification,

which appears to indicate that if the three part test found in that section is met, the debtor

need not seek credit counseling *at all*.  Additionally, the extension found in subsection

(A) is referred to as a "waiver" and an "exemption." Section 109(h)(1)(B) indicates

however that the credit counseling requirement must be satisfied within 45 days at the

outside – making the relief provided in that subsection an "extension" in this Court's

opinion.  A "waiver" is defined by Black's Law Dictionary as "[t]he voluntary

11

relinquishment or abandonment – express or implied – of a legal right or advantage."
BLACK'S LAW DICTIONARY 1611 (8th ed. 2004).  An exemption is defined as "[f]reedom
from a duty, liability or other requirement; an exception."  BLACK'S LAW DICTIONARY
612  (8th ed. 2004).  For instance, if an attorney were to be told by a CLE provider that
they merited a "waiver" of the cost of the program, the attorney would not expect to
receive a bill 30 days later stating that the "waiver" had expired, and payment was due.
That isn't a waiver at all; it is an extension. *See In re Thompson*, 2006 WL 1766528 n. 6
(Bankr. S.D. Ind. Jun. 5, 2006) (noting that the waiver found in Section 109(h)(3) is
actually a deferral).  Therefore, it would be perfectly logical if a layperson or even some
attorneys understood this "extension" to be an "exception," since that is what Congress
stated it *was*.  Congress is "waiving" the requirement that debtors receive the counseling
before the filing, but to get to Congress' meaning requires a tortured construction; the
extension aspect of Section 109(h) could have been more cogently stated.  Were a debtor
to misconstrue this section and believe they had no obligation to obtain a certificate, it
would be inequitable for a court to dismiss a case for "cause" when a debtor has
understandably misinterpreted a poorly drafted statute.

In order to qualify for a § 109(h) "extension," debtor must make a compound
showing that each of the subsections of § 109(h)(3)(A) are satisfied. Thus, to be granted a
judicial extension of time to receive credit counseling pursuant to 11 U.S.C. §
109(h)(3)(A), a debtor must submit to the court (1) a certification (2) describing exigent
circumstances that (3) merit a waiver of the requirement, [13] (4) states that the debtor

---

[13] Some courts have held that imminent creditor action, such as a scheduled foreclosure sale or
repossession, does not "merit a waiver", given the potential debtor's foreknowledge of the event.  *See In re
Rodriguez*, 336 B.R. 462, 475 (Bankr. D. Idaho 2005); *In re DiPinto*, 336 B.R. 693, 697 (Bankr. E.D. Pa.
2006).

requested credit counseling from an approved nonprofit budget and credit counseling

agency, but was unable to obtain services during the five day period beginning on the

date that debtor made the request[14] and (5) which is satisfactory to the Court.[15]  It is not

surprising that many individuals, and particularly those proceeding without the assistance

of counsel, are unable to articulate each factor necessary to obtain some extra time.  In

fact, both Ms. Finlay and Mrs. Zarnel failed to make the requisite showing to obtain an

extension.

**U.S. Trustee's arguments to dismiss these cases**:

**Elemendorf**:

In the Elemendorf Dismissal Motion, the United States Trustee argues that the

Debtor is ineligible to be a debtor under § 109(h), which constitutes "cause" for dismissal

pursuant to 11 U.S.C. § 707(a). The United States Trustee also cites to 11 U.S.C. §

521(b), which provides that an individual debtor must file with the court a credit

counseling certificate as required by Section 109(h).  In the Supplemental Brief to the

Elemendorf Dismissal Motion, the Trustee makes several additional arguments, apparently

aimed at overcoming this Court's holding in *In re Rios*, *supra*.  The United States Trustee

argues primarily that the Bankruptcy Code does not provide for the "striking" of a

bankruptcy case, but rather, dismissal pursuant to Section 707(a) is the only available

---

[14] The five-day window requirement has proved to be huge trap for the unwary.  Indeed, many debtors who seek an extension satisfy the exigent circumstances requirement but are unaware of the five day window or failed to set forth their efforts out of ignorance, which defeats their request.  *See In re Wallert,* 332 B.R. 884 (Bankr. D. Minn. 2005).

[15] The additional requirement that the certification seeking a waiver of the credit counseling requirement be "satisfactory" is a broad grant of discretion to the bankruptcy court to determine whether "exigent circumstances" that "merit a waiver" exist.  *See In re Tomco,* 339 B.R. 145 (Bankr. W.D. Pa. Feb. 27, 2006).  It has been held that while difficult to posit a situation in which the requirements of § 109(h)(3)(A)(i) & (ii) are met but the bankruptcy court finds the certification to be unsatisfactory, the fairest reading of the statute is that Congress wanted bankruptcy courts to exercise discretion in making determinations pursuant to § 109(A)(3.  *See In re Dixon,* 338 B.R. 383, 387 (8th Cir. BAP 2006).

route for a bankruptcy court to dispose of a case filed by an "ineligible" debtor.  The

United States Trustee also reminds the Court that the tide of judicial opinion is against

her; almost all cases published subsequent to *Rios* dismiss for "cause" cases filed by

debtors ineligible for relief by virtue of Section 109(h).   In particular, the United States

Trustee quotes extensively from *In re Ross,* 338 B.R. 134 (Bankr. N.D. Ga. 2006),

because the *Ross* opinion provides a thoughtful analysis disagreeing with the outcome in

the *Rios* decision.  *See*  Supplemental Brief, pp. 11, 13, 14, 16.  The United States Trustee

also argues that Section 109(h) is not a jurisdictional statute; rather, 28 U.S.C. § § 1334

and 157 provide district courts with a jurisdictional grant over bankruptcy filings.

Apparently, several courts have read the *Rios* decision to hold that a bankruptcy court

does not have jurisdiction over cases filed by ineligible debtors.  It is also argued that

striking a petition, after a finding that it is void *ab initio*, creates substantial uncertainty

and renders Section 362(b)(21) superfluous.   The United States Trustee also makes the

argument that the form of relief granted (i.e. striking in lieu of dismissal), which was not

requested in the Elemendorf Dismissal Motion, creates due process issues,[16] and may

provide a safe harbor for malfeasance.

   Insofar as concerns the Finlay and Zarnel Dismissal Motion, dismissal is said to

be warranted by, *inter alia*, debtors' failure to file credit counseling certificates with their

bankruptcy petitions, or to obtain an extension of time in which to fulfill the requirement.

**<u>Eligibility for Relief, Automatic Stay Protection and Bankruptcy Court Jurisdiction</u>**

---

[16] The Court need not address this argument because the United States Trustee requested in the Elemendorf Dismissal Motion that this Court grant "…such other and further relief as may seem just and proper." Surely the United States Trustee agrees "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177 (1803), and would not attempt to curtail this Court's duty to do so by limiting the Court to narrow relief sought in a motion that the Court does not believe is justified under the law.

<u>Invocation of the automatic stay by an ineligible debtor's bankruptcy filing</u>:

The Court has carefully reviewed the applicable sections of the BAPCPA, read case law in opposition to the outcome in *Rios* (and the growing number in support) and has come to the inescapable conclusion that the holding in *Rios* is the correct exposition of the law. A voluntary case is commenced only if an entity *eligible to be a debtor* files a petition with the bankruptcy court, *see* 11 U.S.C. § 301. Section 109(h) provides that an individual *may not be a debtor* unless credit counseling is obtained pre-petition, or the bankruptcy court grants an extension.

The Court cannot agree with the deceptively attractive argument made by the *Ross* court, *supra*, at 138, that the filing of a petition by a debtor ineligible by virtue of 109(h) nevertheless commences a case. It is true that under other subsections of § 109 problems of debtor eligibility may be waived or cured; however, as the court points out in *In re Salazar*, 339 B.R. 622 (Bankr. S.D. Tex. 2006), *every* individual debtor who seeks bankruptcy relief *must* obtain pre-petition credit counseling *or* an exemption; failure to do so renders an individual incurably ineligible to be a debtor. *See In re Warden,* 2005 WL 3207630 (Bankr. W.D. Mo. Nov. 22, 2005) (debtor who received post-petition credit counseling was ineligible for bankruptcy relief). Whereas the examples cited by the *Ross* court dealt with conditions for ineligibility that might be cured (for instance, ineligibility to be a Chapter 13 debtor under Section 109(e) may be "cured" by converting to a case under Chapter 7 or Chapter 11), or have limited application (for instance, ineligibility pursuant to § 109(g) is applicable only as explicitly set

forth therein), it is abundantly clear that no individual may be a debtor without

compliance with 109(h). *See Salazar*, *supra,* at 633, citing cases.    There is no

discretion reserved to the bankruptcy court to determine debtor eligibility

pursuant to Section 109(h), *see In re Cleaver*, 333 B.R. 430 (Bankr. S.D. Ohio

2005) (Section 109(h)(3) is "unequivocal and allows for no other excuse or

exception"); *In re Sosa*, 336 B.R. 113 (Bankr. W.D. Tex. 2005) (A debtor who

does not request the required credit counseling services from an approved

nonprofit budget and credit counseling service before the petition is filed is

ineligible to be a debtor no matter how dire the circumstances the person finds

themselves in at that moment); either an extension was sought and received or it

was not, or a credit briefing was obtained pre-petition or it was not.   If the answer

to either question is in the negative, the case cannot proceed regardless of any

other fact.

　　　Note that Section 109(h)(1) requires that the debtor receive[17] credit

counseling to be eligible; it is Section 521(b)[18] that requires a debtor to file a

certificate attesting that the counseling was received.  There will certainly be

instances where the debtor has not filed the appropriate documentation even

though the credit-briefing requirement has been met, and if this is the case, debtor

is nevertheless eligible for relief, and woe to the creditor who acts precipitously in

violation of the stay in those circumstances.  As this is a matter that is peculiarly

---

[17] Section 109(h) states in pertinent part "…an individual many not be a debtor under this title unless such
individual has…*received* from an approved nonprofit budget and credit counseling agency…an individual
or group briefing…that outlines the opportunities for available credit counseling and assisted such
individual in performing a related budget analysis…"  (emphasis added).
[18] Section 521(b) states that "…a debtor who is an individual *shall file* with the court (1) a certificate from
the approved nonprofit budget or credit counseling agency that provided the debtor services under section
109(h)…." (emphasis added).

within the debtor's knowledge, it is the wise creditor who seeks court approval before acting to exercise its rights where Section 109(h) eligibility is not established.

An automatic stay problem is presented when an individual ineligible to be a debtor files a bankruptcy petition. A straightforward reading of § 362(a) indicates that the automatic stay comes into existence only when a case is filed in accordance with §§ 301, 302 or 303 of the BAPCPA. *See Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (when a statute's language is plain, the sole function of the courts is to enforce it according to its terms, at least where the disposition required by the text is not absurd, even if the statute is phrased awkwardly or ungrammatically).

§ 362. Automatic stay

>(a) Except as provided in subsection (b) of this section, a petition filed under **section 301, 302, or 303** of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities…

When read together, §§ 109(h), 301 and 362(a) establish that no stay can exist for debtors who fail to obtain the required credit counseling or qualify for an exception. *See Salazar*, *supra*, at 626. For this reason, the Court determined in *Rios* that a petition filed by the ineligible debtor rendered that filing *void ab initio*; however, the Court never even *implicated* in *Rios* that it did not have jurisdiction over filings made by individuals or other entities ineligible to be bankruptcy debtors; nowhere in that opinion did the Court state that it lacked jurisdiction to dispose of that filing as it deemed fit, either by (1) determining that the filing was

void as being made by an ineligible debtor; or (2) determining that the case was

filed as a pattern of abusive filings to wrongfully prevent a creditor from

exercising its rights, and ordering some form of relief with prejudice against a

putative debtor abusing the provisions of the BAPCPA or (3) such other and

further relief that may be appropriate under the facts of the case.  Somehow,

subsequent courts interpreting *Rios* assume that because the Court determined the

filing in that particular case was void, the Court was of the opinion that it did not

have jurisdiction.  *See Ross, supra*, at 136; *see also In re Hawkins,* 340 B.R. 642,

643-4 (Bankr. D.C. 2006).  That was not the case at all; the Court specifically

stated that until such time as a hearing came before it on the issue of eligibility, it

exercised jurisdiction, if only to ultimately determine that no stay was in effect

and to strike the case from the Court's docket.   The subsequent decisions seemed

to assume that the Court's ruling that the automatic stay was not in effect meant

that this Court thought that it did not have jurisdiction. The Court does not believe

that an exercise of jurisdiction over a bankruptcy case is correspondent with, or

dependent on, the existence of the automatic stay.  The Court can exercise

jurisdiction over bankruptcy filings even if the automatic stay does not apply or

has been terminated.

28 U.S.C. § 1334(a) states that the district court has jurisdiction over a

case under title 11.  The Court interprets § 1334(a) to encompass cases filed and

pending before the Court even if not properly commenced by the filing - that is,

cases initiated by potentially ineligible debtors - until such time as the Court is

able to determine its jurisdiction over those filings.  On the other hand, a case

under title 11 isn't commenced until a petition is filed by a party *eligible* to be a

debtor. In some circumstances, a debtor ineligible under one chapter, say chapter

13, may nevertheless be eligible for relief under chapter 11 or 7, and thus, may be

entitled to enjoy the protection of the stay regardless of filing ineligibility, which

may be cured by conversion to a case under a different chapter of the Bankruptcy

Code. *See Hawkins, supra,* at 645 n. 7. The *Hawkins* court ultimately determined

that limited jurisdiction over the case was conferred by an ineligible filing, giving

rise to the automatic stay and thus dismissal, rather than striking, was appropriate.

*See also In re Mills*, 341 B.R. 106, 110 (Bankr. D.C. 2006). The Court disagrees

with the argument made in *Mills* that Section 362(b)(21) is rendered a nullity by a

striking. Section 362(b)(21)(a) states as follows:

> [U]nder subsection (a), of any act to enforce any lien against or security
> interest in real property—
>
> (A) if the debtor is ineligible under section 109(g) to be a debtor in a case
> under this title; or
>
> (B) if the case under this title was filed in violation of a bankruptcy court
> order in a prior case under this title prohibiting the debtor from being a
> debtor in another case under this title…

The Court believes that where, as in the cases *sub judice,* ineligibility is

incurable, no stay is created by the bankruptcy filing. The legislative history to

the new § 362(b)(21) indicates that relief from this subsection may be had if

debtor can make a showing of changed circumstances or other good cause to

allow a bankruptcy filing and subsequent institution of the stay. *See* H.R. Rep.

No. 31, 109th Congress, 1st Sess. 303 (2005). Thus, ineligibility pursuant to

Section 109(g) may be cured, and the bankruptcy court therefore exercises

19

jurisdiction over the debtor pursuant to Section 109(g) until such time as eligibility is established. The Stay would therefore be invoked by a filing in violation of Section 109(g) absent the existence of Section 362(b)(21). The existence of Section 362(b)(21) shifts the burden to the debtor to obtain a court-ordered "cure" of bankruptcy ineligibility pursuant to Section 109(g) and seek institution of the stay. To the contrary, there is no such discretion afforded to the Court to determine eligibility pursuant to Section 109(h) – ineligibility is incurable. Congress intended for debtors to seek credit counseling *prior* to filing for bankruptcy relief, so that bankruptcy may be avoided altogether if possible, through, for example, an alternate debt repayment plan. As the stay does not come into effect upon a filing of a petition that does not comply with Section 109(h), and there is no need to create an exception to the automatic stay pursuant to Section 362(b) in those circumstances. Section 362(b)(21) is not rendered a nullity by this interpretation, because ineligibility pursuant to Section 109(g) may be waived by the Court upon a proper showing made by the Debtor, whereas ineligibility pursuant to Section 109(h) is fatal to a bankruptcy filing. No similar relief of the provisions of Section 109(h) are available to ineligible debtors.

In re Flores and 362(b)(20):

Many of the courts that disagreed with the holding in the *Rios* decision, some quite eloquently,[19] have cited to *In re Flores*, 291 B.R. 44 (Bankr. S.D.N.Y. 2003) in support of the argument that the automatic stay should take effect upon the filing of a petition by an ineligible debtor. The Court wishes to point out that it agreed in principal

---

[19] In particular, the Court believes that the decision in *In re Ross*, 338 B.R. 134 (Bankr. N.D. Ga. 2006) was particularly well written and argued; however, the Court respectfully disagrees with the outcome.

with the *Flores* decision and the outcome therein.  The *Flores* decision was written by the

Court's counterpart in the White Plains division of the Southern District of New York,

for whom the Court has the greatest regard and respect.  Additionally, this Court

followed the *Flores* decision in the pre-BAPCPA era.  But the Court cannot ignore the

fact that *In re Flores* has been explicitly legislatively overruled by 11 U.S.C.

§ 362(b)(21).  The Court is somewhat surprised by the multiple cases which hold that the

outcome in *Rios* renders Section 362(b)(21) mere surplusage, and then rely on the

reasoning in *In re Flores* as justification for disagreeing with the outcome in *Rios*.  *See*

*e.g. In re Seaman*, 340 B.R. 698 (Bankr. E.D.N.Y. 2006); *In re Tomco*, *supra* at 161

(Bankr. E.D. Pa. 2006)[20]; *In re Ross*, *supra*.  Section 362(b)(21) was obviously enacted to

avoid the very result that *Flores* created – the institution of the automatic stay upon the

filing of a petition by an individual ineligible to be a debtor in an effort to forestall a

secured creditor.  If this Court were to adopt the reasoning espoused by the majority of

courts that decide that dismissal for cause is appropriate in these cases, the same result

achieved by the *Flores* decision could occur in cases filed without compliance with

Section 109(h) – ineligible individual debtors could file bankruptcy petitions, perhaps

with no intention of reorganizing, thereby invoking the protection of the automatic stay,

potentially delay matters for several months before a determination of eligibility is made,

while secured creditors are forestalled from proceeding at a potentially great expense.

---

[20] The *Tomco* court stated that this Court struck the *Rios* case for want of jurisdiction.  *Rios* is a short decision; the word jurisdiction appears twice therein, in connection with the Court's explanation that it *did* have jurisdiction over the matter, pursuant to 11 U.S.C. § 1334, *see Rios, supra*, at 178.  The Court finds it interesting that the *Tomco* court failed to recognize that.  The *Tomco* court also interpreted the word "may" in Section 301 to have an expansive definition, that a debtor *might* be able to prove eligibility for bankruptcy relief.  This interpretation of Section 109 is perfectly consistent with the reasoning in the *Rios* decision.  Whereas ineligibility for bankruptcy relief under other provisions of Section 109 may be curable based upon the case law cited *infra*, and the plain language of Section 109(h), the failure to obtain credit counseling or seek an extension is a fatal defect.  *See Warden, supra*.

There will always be those who will abuse the system and the manner and means of so doing are limited only by the extent of human ingenuity.  It is not possible or even desirable to adjudicate matters to attempt to prevent potential wrongdoing not immediately before the Court.  Although institution of the automatic stay upon the filing of a petition by an ineligible debtor may be the "better rule,"[21] *see Ross, supra*, at 141, quoting *Flores*, it is not the law as set forth in BAPCPA.[22]  In enacting Section 362(b)(21), Congress obviously sought to stop a practice that was not warranted, in Congress' view at least, under the provisions of the Bankruptcy Code.  It would be illogical to agree to a treatment under Section 109(g) that would circumvent Congress' intent in Section 362(b)(21).

The Court also notes that ineligibility by virtue of Section 109(g), unlike Section 109(h), is waivable by the Court upon an appropriate showing by the debtor. The inclusion of § 362(b)(21) does not alter the plain language of Sections 109(h), 301, 302, and 362(a), which when read to together, as stated *supra*, lead to the logical result that the filing of a petition without first obtaining a credit briefing as required by 11 U.S.C. § 109(h) renders a debtor ineligible for bankruptcy relief, and does not trigger the protections of the automatic stay.  *See In re Carey*, 341 B.R. 798 (Bankr. M.D. Fla. 2006); *Salazar, supra,* at 339 B.R. 633; *In re Rios*, *supra*.  Although several other judges

---

[21] The Court is well aware that the choice between dismissal on the one hand, and striking of a case on the other, is a "Hobson's choice."  Neither result is good under the provisions of the BAPCPA – on the one hand, a debtor whose case is stricken may well face dispossession of assets because no stay was in place to protect them.  On the other, a debtor whose case is dismissed faces limited applicability of the automatic stay in subsequent filings pursuant to 11 U.S.C. § 362(c).

[22] *But see In re Thompson*, 2006 WL 1766528 * 4, which makes the interesting and persuasive argument that the automatic stay is nevertheless initiated by the filing of a bankruptcy petition, regardless of whether or not a bankruptcy case is "commenced."  This argument is based upon the language in Section 362(a) that states that a petition "filed" under that section initiates the automatic stay, without reference to eligibility or commencement of the case.  Although the Court considered this argument in writing this opinion, the Court held the concern that Section 362(a) was phrased in that way to include petitions "filed" under Section 301, 302 and 303, while explicitly excluding former Section 304 of the Bankruptcy Code relating to foreign proceedings from the purview of the automatic stay.

have argued that this result renders the language of Section 362(b)(21) a nullity; the alternative argument, that a case is commenced by an ineligible debtor's filing of a petition, and the stay arises thereby, renders a straightforward reading of Sections 109(h), 301, 302, 303 and 362(a) irrational.  The Court will not discount obvious Congressional intent in enacting Section 109(h) – that incurably ineligible debtors not be permitted to enjoy the protections of the automatic stay.   The fact that Congress failed to include Section 109(h) within Section 362(b)(21) bolsters this Court's opinion that Section 109(h) ineligibility is an incurable defect, given the legislative history behind Section 362(b)(21) which indicates that ineligibility pursuant to Section 109(g) may be cured.  Congress obviously intended Section 109(h) ineligibility to have a preclusive effect; there was no need to provide an exception to the automatic stay for ineligible individuals by virtue of § 109(h) because no case is commenced by a bankruptcy filing in that regard; and no stay invoked thereby.

The Court now turns to the determination of the appropriate procedural devices for disposing of a case filed by a debtor ineligible for bankruptcy relief due to a failure to comply with Section 109(h).

**<u>Dismissal under 707(a) or "Striking" a Bankruptcy Filing for Failure to Comply with Section 109(h):</u>**

The United States Trustee reminds the Court that in the months following the publication of the *Rios* case, many of this Court's colleagues have decided that dismissal, rather than striking, is the appropriate remedy when a case is filed by a debtor who has not obtained credit counseling prior to the filing.  *In re Seaman, supra* provides a useful summary of the arguments against striking, which are set forth below:

- When a debtor ineligible for bankruptcy relief by virtue of other subsections of Section 109 files for relief, the bankruptcy courts have almost unanimously dismissed or converted those case;
- A petitioner's ineligibility for bankruptcy relief is not jurisdictional;
- Dismissal avoids uncertainty as well as substantive and procedural pitfalls, such as precipitous action by a zealous creditor, and the need for the bankruptcy court to determine eligibility before such creditor action is taken;
- Dismissal comports with due process rights, citing to *In re Flores, supra;*
- Striking a petition renders the language of Section 362(b) superfluous;
- The risk of the abuse of the automatic stay, shielding bad faith serial filers from creditor action in the time between filing of the petition and the striking of the case, which Congress did not intend as evidenced by a review of the legislative history; and
- BAPCPA's failure to provide a remedy for failure to file credit counseling certificate should not lead to such a sweeping change in established case law.

Congressional intent in enacting Section 109(h) was not to limit debtors' resort to bankruptcy relief, but to allow debtors to make informed choices before filing for bankruptcy.  *See Rios, supra*, at 179-80; *see also In re Warden, supra,* at *2.  Congress did not intend for ineligible debtors to enjoy the "most powerful protection" offered by the Bankruptcy Code – the automatic stay. *Salazar*, *supra*, at 629-30 ("It is implausible to believe that Congress specifically identified people to exclude from the bankruptcy process, yet permitted those same people to benefit from…the automatic stay.").  Furthermore, Congress could have, but did not, include a credit counseling certificate as

among those documents to be filed pursuant to 11 U.S.C. § 521(a) by debtor to avoid *automatic* dismissal pursuant to § 521(i)(1).

As stated, many courts have held that ineligibility to be a debtor is the definitive "cause" for dismissal, pursuant to 11 U.S.C. §§ 707(a) and 1307(c). *See In re Seaman*, *supra*, at 707; *In re Tomco*, *supra*, at 158  (pointing out that § 707(a) is an inclusive provision and that the enumeration of certain "causes" for dismissal therein is not exhaustive, and does not preclude a finding that ineligibility is "cause" for relief).  The Court would be more persuaded by the *Tomco* and other courts' arguments regarding Sections 707(a) and 1307(c) if the specifically enumerated "causes" for dismissal found in Sections 707(a) and 1307(c) did not include reference to paragraphs (1) and (2) of Section 521(a),[23] but not to Section 521(b), the subsection of § 521 that sets forth a debtor's duty to obtain credit counseling.  Congress explicitly made failure to file certain documents pursuant to Section 521(a)(1) and (2) "cause" to dismiss; but did *not* explicitly include credit counseling certificate among the enumerated causes.  *Cf. In re Bass*, 2006 WL 1593978 (Bankr. W.D. Tenn. Jun. 9, 2006) (Section 707(a) does not provide that a failure to timely obtain credit counseling and file a certificate is cause to dismiss).

The Court thinks that where Congress has not explicitly directed bankruptcy courts to a required outcome, the Court may act within its discretion.  Section 105(a) of the Bankruptcy Code vests this Court with the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." "Section 105 is an omnibus provision phrased in general terms as to be the basis for a

---

[23] Section 707(a) cites to Section 521(1); strictly speaking, there is no Section 521(1) in the BAPCPA. Congress amended Section 521 to include a section (a) and (b), and it is clear from the context of Section 707(a) and 1307(c), and pre-BAPCPA formulation of §§ 707(a) and 1307(c), that references to Section 521(1) and (2) in the conversion or dismissal sections of Chapter 7 and 13 refer to Section 521(a).

broad exercise of power in the administration of a bankruptcy case." *See Flores*, *supra*, at 54, quoting 2 Collier on Bankruptcy, ¶ 105.01 at 105-5 (Lawrence P. King, et al. eds. 15th Ed.).  The Court's ability to strike a case/petition has been challenged by the U.S. Trustee as not being explicitly provided for in the BAPCPA or otherwise in the Bankruptcy Code.  Striking a petition is not without precedence in the bankruptcy context, however.  *See In re Thompson*, *supra*, at *4 (striking a petition rather than dismissal is permitted under Fed. R. Bankr. P. 9011); *In re Salazar, supra*, at 632-3 (refusing to alter opinion "striking" a case/petition for merely "semantic" reasons).  The action of striking a case/petition is an administrative function engaged in as a docket management tool.  The Court has an inherent right to manage its case docket, *see Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (federal courts are vested with the control to manage their own affairs so as to achieve an orderly and expeditious disposition of cases); *In re Khan*, 172 B.R. 613, 622 (Bankr. D. Minn. 1994); *accord, In re Blumenberg*, 263 B.R. 704, 711 (Bankr. E.D.N.Y. 2001), including the ability to administratively dispose of matters not properly commenced by putative bankruptcy debtors.  The Court's powers by virtue of Section 105(a) to take appropriate action to carry out the provisions of title 11, and its inherent docket management powers, provide the Court with the ability to decide, given the circumstances of each particular filing, whether a matter filed in violation of Section 109(h) requires striking of the petition and closing of the case, or whether relief with prejudice for "cause" is the appropriate avenue, taking into consideration various factors.[24]

---

[24] Some factors may include the number of previous bankruptcy filings; whether the previous filings were dismissed/stricken for failure to file a credit counseling certificate; thereby signaling debtor's awareness of the requirement; whether a secured creditor was sought to be stayed by the filing; whether the debtor is acting in concert with others to forestall a secured creditor; whether the debtor has filed all the required

As for the possibility of malfeasance, it is impossible to legislate or rule in such a way as to preclude the eventuality of bad faith actions completely.  The Court believes that the measures suggested by this opinion will go a long way toward preventing manipulation of the striking of petitions – where a petition is obviously filed for improper purposes, and credit counseling requirements are being strategically used to avoid the provisions of the BAPCPA, the Court can use its inherent powers to impose preclusive relief.  It must also be noted that the outcome proposed by the proponents of dismissal could also lead to malfeasance – an individual may file a petition without credit counseling, invoke the protection of the stay, sit back and do virtually nothing, secure in the knowledge that creditors may not proceed until dismissal or stay relief is granted, and enjoying the delay that such action will involve.  Presumably, persons who file bankruptcy on one or even multiple occasions, precipitated by a lack of financial savvy rather than an attempt to deliberately forestall creditors, are not "bad faith" filers – they are just ignorant of the law or inept in financial matters.  Those who wish to circumvent the system will find a means of doing so, regardless of whether the petition is ultimately stricken or dismissed.  The Court may use its inherent powers to prevent abuse of the Bankruptcy Code, and if the Court does determine that bad faith exists, due to, e.g., serial filings or skeletal filings, the Court can strike a case, with prejudice to future filings if necessary, after undertaking a case-by-case analysis of the circumstances.

---

schedules and statements with the petition; whether there was little or no effort to reorganize in prior filed cases; or other indications that a debtor is abusing the protections of the automatic stay.

## **CONCLUSION**

**Lena Elmendorf:**

Ms. Elmendorf did not file a credit counseling certificate, and has not filed any previous cases. There are no other indications of abuse of the provisions of the BAPCPA; the argument made by the Trustee is that a failure to obtain credit counseling alone is "cause" to dismiss. The Court disagrees; the Elemendorf case is ordered stricken, and the clerk is directed to close the case.

**Diana Finlay:**

Ms. Finlay has filed three back-to-back bankruptcy petitions, in an obvious attempt to forestall the sale of her residence by her secured lender. Ms. Finlay sought, and obtained, an extension of time to file her credit counseling certificate in her prior case. Therefore, Ms. Finlay was not ignorant of the requirement. Ms. Finlay also sought, but was denied, an extension of time to file her credit counseling certificate in the instant filing. The circumstances in Ms. Finlay's filings are indicative of a pattern of delay and an abuse of the provisions of Section 362, without any concomitant intent to reorganize her financial affairs. Although the Court might be inclined to grant some sort of preclusive relief in circumstances such as Ms. Finlay's, i.e. her failure to comply with Section 521(a)(1), her successive serial bankruptcy filings and her failure to evidence an attempt to successfully reorganize in any of her three bankruptcy proceedings, dismissal with prejudice was not requested by the U.S. Trustee, nor did the U.S. Trustee seek any relief other than dismissal. The Court therefore strikes Ms. Finlay's case based upon her failure to obtain her credit counseling certificate pursuant to Sections 109(h) and 521(b).

**Shayna H. Zarnel:**

Mrs. Zarnel sought and was denied an extension of time to obtain her credit counseling certificate.  Mrs. Zarnel nevertheless filed a credit counseling certificate that was obtained several days after her bankruptcy filing.  Although this is Mrs. Zarnel's first filing, her husband, Alfred Zarnel, is a serial filer.  Mrs. Zarnel's Chapter 13 plan is not feasible – as with her husband's proposed Chapter 13 plan, she is unable to pay a fraction of the almost $70,000 in mortgage arrears that must be cured in the sixty-month Chapter 13 plan.  As this is Mrs. Zarnel's first bankruptcy filing, the Court considers that she should be given the benefit of the doubt that she may be proceeding in good faith.  The Court therefore strikes Mrs. Zarnel's case.

**Certification to the Second Circuit Court of Appeal**

There are several conflicting cases within this circuit on the issues addressed in this opinion, to wit:

- whether a petition filed by a debtor ineligible for bankruptcy relief pursuant to 11 U.S.C. § 109(h) commences a bankruptcy case within the meaning of §§ 301 and 302 of the BAPCPA;
- whether the automatic stay is invoked by such a filing; and
- whether the appropriate disposition of such a petition is always dismissal for "cause" pursuant to 11 U.S.C. § 707(a) or whether a bankruptcy court may choose to strike or dismiss a petition in view of the particular circumstances sub juidice in the exercise of its equitable powers pursuant to § 105(a) to carry out Congressional intent that individuals receive credit counseling *before* filing for bankruptcy relief.

This Court's decision herein, and in *In re Rios*, 336 B.R. 177 (Bankr. S.D.N.Y. 2005) and the decision in *In re Hubel*, No. 05-20260 (Bankr. N.D.N.Y. filed Jan. 3, 2006), are at odds with the outcomes found in *In re Seaman*, 2006 WL 988271 (Bankr. E.D.N.Y. Mar. 30, 2006) and *In re Wilson*, No. 06-60870 (Bankr. N.D.N.Y. filed Jun. 30, 2006).

Therefore, the Court has determined that it is appropriate to certify these questions to the

Second Circuit Court of Appeals, pursuant to 28 U.S.C. § 158(d)(2)(ii) and Interim Fed.

R. Bankr. P. 8001(f)(4).

## Conclusion

The United States Trustee is directed to submit an order consistent with this

memorandum opinion within ten (10) days.


Dated: Poughkeepsie, New York
        July 18, 2006


                                        /s/ CECELIA G. MORRIS
                                       Cecelia G. Morris, U.S.B.J.